May it please the Court, Anne Hester representing Joe Lanning. The government concedes that due process requires the Court to apply a reasonable person standard under the physically threatening or menacing prong of the regulation at issue here. This concession alone is enough to require reversal under Stromberg v. California because the Magistrate Court's general verdict may have rested on an unconstitutionally vague subjective standard. There are two grounds to conclude this. First of all, the government emphasized in its argument to the Magistrate Court, Ranger Darling's subjective feelings about being touched by Mr. Lanning. But second, there's a lack of evidence to support the verdict under an objective standard. So it fits squarely on that case, the Stromberg case that you just cited, that the fact that this has been conceded to be objectively, the objective standard applies, that the jury could have found a subjective basis and therefore that in and of itself is enough. That is in and of itself enough. Now Stromberg is a jury verdict, it's Street v. New York is a bench verdict. So it also does apply to a bench verdict. And yes, it does apply in this case. The evidence is insufficient to convict Lanning because Darling's apparent consent to being touched should preclude any finding that Lanning's conduct was physically threatening or menacing. The government appears to agree that Darling's express consent would have negated any finding that Lanning's actions were physically threatening or menacing. And the doctrine of apparent consent, which generally applies whenever consent is an issue, should apply here as well. Because under the physically threatening or menacing prong, allowing an officer's undisclosed intentions to override his outward appearances of consent, in effect applies a subjective standard depriving a defendant of fair notice that his conduct is illegal and violating due process. In the date rape context, if someone is receptive to a kiss, does that necessarily mean they're receptive to more aggressive forms of behavior? Is that also implied consent? Well, I think it's implied consent unless they do something to convey to the other person that they're no longer consenting. But what if there's no time, there doesn't appear to have been any break in the action or opportunity, if there's no break in the action or opportunity to do so? I still think that the person to whom the advances are directed would have to do something to convey a lack of consent. In this case, it's so far different from a date rape context as well because here even without the apparent consent doctrine, the evidence was insufficient to prove Lanning's guilt under a reasonable person standard. Because under the totality of the circumstances here, a reasonable person in Ranger Darling's position would not have felt physically threatened or menaced for these reasons. First of all, the encounter took place in an area that was well-known for sexual activity between men and Ranger Darling chose it for that reason. Okay, but you've moved beyond my implied consent question. Okay. And that's fine, but... I still think that if two people are moving down the path towards some type of sexual activity, if... Which could start with something as innocuous as a kiss. Right. So there's an obligation on the person who is being kissed to say, okay, but that's as far as I want to go? Or to give some physical manifestation of I don't want to do that, pushing something. As the behavior escalates, as long as they appear to be continuing to consent in the behavior, then there is apparent consent. They don't have to actually say, yes, I consent to this. It just is a practical matter on a continuum. The offensive behavior may have occurred before there's an opportunity to object. There wasn't a lot of time. There was time in this case. Okay. And so that you're making... You think that there's a factual distinction. There is a factual distinction, because here there was a whole series of interactions between these two people that would have led any reasonable person in Darling's position to expect what happened next, and would have led a reasonable person in Lanning's position to expect that that was okay under the apparent consent doctrine. Because like I said, this took place in an area that was specifically chosen by Darling for the reason that there were frequently sexual activity between men in that area. And Darling himself engaged in sexually provocative conduct that was designed to elicit a sexual response. But after the consent, there doesn't seem to have been, as I can tell from the facts, any pause between the apparent consent and the grabbing of Darling's genitals, as I read the record. Is that not correct? Well, I would suggest to the court that the apparent consent is not simply Darling saying yes to the solicitation, but the whole series of behavior that occurred before that. His seeing Lanning on the trail before, and Lanning touched himself, and then Darling smiled and greeted him. And then Lanning was off by himself in the woods, and Darling is the one who sought Lanning out on the secluded trail in the woods. It wasn't Lanning seeking Darling out. And then Darling was the one who directed the conversation toward homosexual sex in an attempt to make Lanning think he was interested in sex. And then, of course, when Lanning fell for it and asked him for sex, Darling expressly agreed. And Lanning's conduct was nonviolent and extremely brief, and Darling easily stopped it. And Darling's stopping it by arresting Lanning was the first and only attempt to communicate to Lanning in any way that he was not interested in having sex. Let me ask you, at least in terms of making sure I'm focused on this right, you started out with the Stromberg basis. Is that an alternative basis, or is that, it seems like to me, if you, on that basis alone, you don't need to go to sufficiency, is that correct? Well, what will happen if you reverse based on Stromberg is that he'll get a new trial. If you reverse based on, excuse me, the insufficiency of the evidence, then it would need to be remanded with instructions for entry of an acquittal. That's the difference between the two. I understand that, but I'm just, in terms of your argument, because you sort of slid from one right into the other, and I wanted to make sure that demarcation was there, that the Stromberg basis is really on its own, and that is because the magistrate didn't give a reason, could have been any of these reasons, and as you say, and I assume the government can say it again, if they did concede that it's an objectable basis, it could have been on this other basis, and on the Stromberg type cases, this would not be permitted. Correct. And that alone would get you a new trial, but you, say, now move to the sufficiency with a different remand. I'm saying you should go even further in order, entry of an acquittal. Really you want us to not go on a Stromberg basis, but to say it's insufficient, the evidence. Correct. Yes. Despite acknowledging the unconstitutionality of using a subjective standard to determine physically threatening or menacing, the government urges the court to apply a definition of obscenity that suffers from that same flaw. Lanning has given three reasons, all unrefuted by the government, why this court should apply the Miller definition of obscenity to the regulation in this case. First of all, applying the Miller definition is necessary to carry out the interior department's express intent and adopt this regulation. The department said when it adopted this regulation that it intended to allow for protected speech activities while forbidding obscenity, physically threatening acts, and fighting words, and the only way to carry out this intent is to invoke the Miller obscenity standard and avoid infringing constitutionally protected indecent sexual expression. Second of all, using the dictionary definition of obscene would require courts to apply different definitions of obscenity depending on whether a defendant's conduct is expressive. And the difficulty in this interpretation is well illustrated here because accepting the government's argument would lead to the result that one definition would apply to Lanning's speech in this case and another one would apply to his conduct. Finally, using the Miller definition is necessary to avoid making the regulation unconstitutionally vague. The government's proposed definition uses the terms disgusting, repulsive, abhorrent, virtue, and depravity. And these words are no different than the words annoying or the phrase no apparent purpose which the Supreme Court rejected in Coates and Morales is unconstitutionally vague. These terms are inherently subjective just like those terms are. And because these terms will cause interpretation to vary from person to person, using the government's definition would leave ordinary people guessing about what conduct is obscene under the regulation. And it also would make the regulation susceptible to arbitrary and discriminatory enforcement under Coates. You don't think a rational trier of fact could have concluded that the grabbing of Officer Darling's crotch was physically threatening or menacing? Not under the reasonable person standard based on Darling's behavior leading up to that. And also based on the nonviolent nature of Lanning's conduct and the extremely brief contact between his hand and the ranger's crotch. What makes this a difficult, maybe interesting case is this is a male-to-male type contact in which Officer Darling is out looking, I guess, for someone who's engaging in this type of conduct. And then we get into the question of what is obscene and is it obscene for one male to grab the crotch of another male if he has indicated a predisposition to be involved with the male? Would it be relevant to also say that if that's so, then it must be obscene if it was a male-to-female and there was this indication to a female that, in fact, I would like to engage in sex and then she grabs his crotch. In other words, do they have to be, it would seem to me that you would have to conclude both. You'd have to conclude in both circumstances that grabbing would constitute illegal behavior in order for it to get to this one. Well, and that's the difficulty of not using the Miller obscenity standard because the type of words that the government is asking the court to apply as a definition of obscenity lend itself to that type of discriminatory enforcement and that is a problem. But the difficulty of using Miller is that it really doesn't apply to conduct. It's hard to translate. That's the government's argument is that the Miller definition and applying it to conduct is strained and make no sense. But if that's the case, it's the result of the government's choice to use that provision to prosecute behavior between two individuals under a regulation that the department has expressly stated is aimed at speech and expression instead of under other statutes that are aimed at conduct, for example, the North Carolina Indecent Exposure Statute or even the Virginia statute that was mentioned in the argument preceding this one. Could I just focus for a moment back on the language of 2.382, a person commits disorderly conduct and I will focus on the recklessly creating a risk of public alarm or a nuisance. Okay. Or in a manner that is likely to inflict injury or incite an immediate breach of the peace. Would sexual activity in the place that we speak of meet that requirement? I'm going to address the immediate breach of the peace portion of that first because the breach of the peace language in that regulation is drawn directly from a Supreme Court fighting words case which is Chaplinsky versus New Hampshire and the Ninth Circuit discusses this in the Puccia case. In the department it stated that this provision is intended to address fighting words which the department describes and the Supreme Court precedent agrees are words that result in a clear and present danger of violence or physical harm. In this case, there's no evidence that any bystander saw what was happening and it was in a remote place, although it be public in a generic sense. So where is the likelihood of the incitement of the breach of peace as far as evidence is concerned? That is what is missing with respect to the breach of the peace prong of this, that there are no bystanders. So there's no reason that there could, apparently it was visible. From 80 yards away. And that there was no reason that people could not venture into that area, there was no restriction that would keep people out of that area. Correct. But the standard is clear and present danger of violence. So this is. Well no, inciting an immediate. Right, inciting an immediate breach of the peace. But if you look at the language, that comes directly. It also says public alarm nuisance, creating a risk and recklessly creating a risk of public alarm or nuisance. Correct. That's in the mens rea portion of the statute. And that's where there's some confusion between whether it has public or not. And this is where the public aspect of it comes into play is with the mens rea, but not with respect to the. The piece certainly connotes the involvement of the public. It does. But, but whereas with the mens rea, it's, it doesn't matter whether there are actual bystanders nearby. With respect to the immediate breach of the peace, it does matter because it has to be an immediate breach of the peace. And if there are no bystanders there to breach the peace, there cannot be an immediate breach of the peace. Okay. Thank you, Your Honor. Thank you. Ms. Ray. Thank you, Your Honors. May it please the court, Amy Ray for the United States. I think it's important to separate the two sets of issues here. First of all, we have sufficiency of the evidence and then we have a constitutional challenge. Stromberg only says that reversal is required where there are unconstitutional bases for the conviction and we're not sure under which basis the defendant was convicted. In this case, there, there is no indication in the record that Judge Howell, the magistrate judge, applied a subjective standard with respect to the physically threatening or menacing way of committing this statute. There's no indication he applied anything there, is it? Because we don't know what he did. Do you concede that the correct standard is the objective reasonable person standard? I do. I do. I do concede that. The government concedes that it does require an objective standard with respect to what is physically threatening or menacing because it can't just be, you know, a particularly vulnerable defendant. But there were no jury instructions in this case because it was a bench trial, but I don't think that we presume that magistrate judges apply the wrong standard. And the standard in this case has to be objective. The reason, but that doesn't mean that the government may not produce evidence of what the, say, victim or the, in this case, Ranger Darling, subjectively thought because of course evidence of what someone subjectively thinks is evidence that might go to what a reasonable person would think or experience in this situation. So the Stromberg analysis does not require that the judgment in this case be vacated because the court should not presume that Judge Howell got it wrong. There's nothing in the record to suggest that he did. And there were three legitimate bases upon which Judge Howell could find that this offense was committed. Stromberg did not apply to a question of insufficiency of the evidence. So you're saying there's no case that deals with a bench trial type application of Stromberg? I know of none that says that where a judge does not explicitly or there's no indication on the record that it was an unconstitutional basis. I certainly don't know of a case that applies Stromberg in a situation where the court would be inferring with nothing other than the fact that it could have been unconstitutional where the court reverses that. That's vacates it and says it has to go back. You can kind of know what the judge does is typically the judge should tell you. And when you have all these different bases by which you can find a person guilty, it would have at least been prudent, if not necessary, for the magistrate judge to indicate the bases upon which he was making his determination if he simply says he's just guilty. And you don't know. I mean, because, you know, we presume he knows this, but I don't know how many of these cases the judge sees. He probably doesn't see them. I don't know. Maybe he does see a bunch of them. Or how, I just don't know. Well, it makes it very difficult even when you're dealing with a bench trial for an appellate court to conclude, well, we're going to presume that he applied the objective basis. Well, at a minimum, the defense should have argued that there was a difference and that he should have applied an objective basis. That argument was not made before Judge Howe. There was no suggestion before Judge Howe that he should apply the subjective versus The defendant suggests that the government made that argument, and that's not true. The government did not come up and say as a matter of law the court should apply a subjective standard. The government did present evidence of what Ranger Darling subjectively experienced. But that evidence is perfectly appropriate in terms of going to whether or not under an objective standard. So Judge Winn, I don't disagree with you in terms of saying, well, in a bench trial, perhaps a judge should give more. But a judge doesn't have to. It's a general verdict. It's perfectly appropriate. And the defendant, in this case, did not argue that a finding on a subjective basis versus objective was inappropriate in the magistrate court. I don't remember. Was he represented by counsel at that time? Absolutely, Your Honor. He sure was. He was represented by the Federal Defender's Office. So there are three independent bases in terms of sufficiency of the evidence. Stromdorfberg does not apply as to sufficiency of the evidence claims. If Judge Howell could properly find that this defendant committed this offense under one of those three bases, then that verdict survives. Because Stromberg only applies in terms of a constitutional analysis. And you're hanging your head on all three of them? Sure. I think the evidence, yes. The evidence supports all three. And the evidence supports all three. I think the easiest one. The definitive one can't be too strong for you, can you? Where are you going to get that definition from? The definition as it applies to conduct can come from a general definition of obscenity. There's nothing wrong with that. What is that definition? The definition is what is repulsive or what is, you know, it says to disregard the moral, crass disregard of moral standards, disgusting. And here's what I would note about that. Tell me what the moral standards are that are violated here. It is a reasonable person's standard, Your Honor. And the defendant's argument with respect to Coates, the reason annoying was improper and unconstitutional under Coates and vague is because it depended on the perception of the bystander. That was a... I don't know what that, what you viewed that to be. It was... I gave the example that if this is so in a male-to-male type situation where the officer has indicated a predisposition to be in a male-to-male contact, would the answer here be the same in terms of the obscenity if it's a male-to-female and it's a female that turns around and grabs the guy? Yes. It sure would. And I'll tell you why, Your Honor, from just... As I was looking at this case and thinking about it, and I thought about all of those scenarios, when a person agrees to engage in sexual relations in a public place, whether it's on, in a parkway, on parkway land or down in a festival in downtown Asheville, you meet someone, you agree this is what you're going to do. You do not agree that that person may turn around, walk towards you and grab your crotch. And I don't care if it's a female or a male, any combination is reasonably, could be found in a reasonable person to be offensive, objectionable and obscene. And I think that that is why the government in this case feels like it easily meets all three of those. Tell me, what precipitated the conduct, wasn't the conversation, that's a little painful to go through that, but if you wouldn't mind, because it's not in a vacuum that he just turned around and grabbed his crotch. No. It wasn't like there were two men walking out and then he just turns around and grabs his crotch. There were some things that happened that sort of... Well you tell me. Yeah, what happened was he said, he started talking about the fact that Asheville is an open community and there's no question... He's being the officer. Right. And there's no question, listen, the government concedes that Ranger Darling was out there to address a particular problem. I just want to deal with the conduct. So he says that. Yep, he says it's an open community and then the next thing is that the defendant says that he tells Ranger Darling that he would like Ranger Darling to F him. Yes. And Ranger Darling agrees? He agrees to do what? To F him. Yeah, I don't want to engage in sexual... I understand, I understand. He agrees. Yes, he does. But he does not say I will do it here and now. And I don't... This is the thing that I think is interesting because there's an implication or suggestion that when one agrees in public to engage in sexual conduct that it's going to happen right there. And that is... Surely we're not to the point where that's true and that at that point if someone physically and aggressively grabs you... If it's a male-female situation where the same thing happens, a man is approached and the woman says to him the same thing and he says, oh yes, sure, and she grabs him, you said the result was the same. I do and I'll tell you, if I'm walking through the woods near the Sleepy Gap River, yes, if I'm walking through the woods and I have, as it happens, with my kids and I see a male and a female interaction like this... There are no kids. There are no bystanders here. Well, actually, we don't know that. We know that there were... There was... The testimony was that there were several people walking around, but it was within sight. I mean, Ms. Hester said it was 80 yards away. It was 80 yards away from the overlook, perhaps, but it wasn't that far from a trail. And how did they know that there wasn't someone coming up from the other direction on the trail? I mean, that can't be the standard either. It's not that we have to prove that people were right there available to watch. This was very public. This was on a trail very close to trails that are traversed regularly by bikers and hikers. And so the fact that that happened, I do respectfully suggest that male-female interaction would have had the same response. I believe that most of us walking by, a reasonable person walking by and seeing someone grab the crotch of another person like that would find that it was obscene. But let's just say it wasn't. Then we get to the fact that it's physically threatening or menacing to a reasonable person to be grabbed like that when, admittedly, you have agreed to engage in sexual conduct, but you haven't said it was going to happen there and there's nothing in the record that supports the notion that it was going to happen there. Although I do think it's reasonable to infer that the defendant intended it to happen there once he sees what he does. This is one of those kind of cases you wish you didn't have to ask these kind of questions, but you got to. I mean, to figure out what's going on here. This grabbing, was it pain? I mean, if you grab a man typically in the genitals area, that can be a very uncomfortable thing depending on how it's done. It's described as a grabbing, but it's no sound from the officer coming, you know, that hurt or anything like that. How was it described? It was described as a firm grasp, firm. I don't think we have any testimony as to whether the officer yelled out in pain. It was a firm grasp. And not only that, but it was a firm grasp after the defendant turned around and backed into him and essentially began the sex act there in terms of what it appeared he intended to have happen. Is it the firmness of it that makes it physically threatened? If he turned around and just took his hand and brushed him a bit with it, would that be physically threatening? I don't think it would be nearly as physically threatening as firmly grabbing. So it's the firmness of the grasp that does it? I think that that is one of the most important factors in this case, yes, Judge Winn. It is absolutely one of the most important factors. It seems like to me it is the important factor because if you don't have a firm grasp and he simply turns around and he gently touches him there or massages him, it could be a different type of a touch than if he reached and he grabs or yanks him. It would be. I would say a couple of factors, though. And we're limiting our discussion, I think, on physically threatening or menacing because if we go to immediate breach of the peace, I think something a little less... Sure. But so in that context, though, I think it's not only the firm grasp, but also it was very unexpected. It happened very quickly. All of a sudden he's turning behind and backing up to him and boom, he grabs him. So all of those things... Because he's just said, I will F you, and so that's a little weaker than the firmness. He has said that, but he did not say, I'm going to do it right now. He didn't say, let's have this experience right here in the woods. This is an open community. They're out in the woods and it's kind of understood they're out there and this is what people do out in this area right here, isn't it? I mean, isn't that kind of why the officer's out there? It is. But to be fair, that's not the only thing that happens in that area and that was the whole purpose of this sting operation. I mean, what happens in this area is people who are interested in viewing the area of the Blue Ridge Parkway, hiking, biking, looking at the overlook. That's the purpose of that property. That's the purpose of the public paying for that property. That purpose is sort of defined once you engage in a conversation like this out in the middle of somewhere man to man type conversation and you know this is kind of the place where you kind of meet up and you kind of do these things out here. That conversation is defined. You're not out there hiking at that point. No, those two individuals weren't, but it is not true. This record doesn't support the notion that all two male couples that got together out there decided to engage in the sex act on that property. That's just not a fair inference and I don't think, and what's more important is what is a fair inference for Judge Howell to draw? Judge Howell could draw the inference fairly that when one consents to have sex with someone in a public place, one does not consent to have someone turn around back into him and grab his crotch right there in public. You do not agree to have relations in a public place simply because you agreed to have them at some unspecified time in the future. Ms. Hester said once the process started that it was incumbent upon Officer Darling to do something to indicate that it could not continue. I think that's an impossible standard when it comes to interactions that happen just like this. I would flip around. Let's just say it was a woman who was grabbed by a male in this situation. We would not expect a woman to be able to stop a physically grabbing and I think most of us would conclude that that was physically threatening or menacing. There's no time period there. That happened very quickly, he said. The same is true if it's a man grabbed by the woman. Absolutely, Your Honor. As an example, that would probably fit a little better. I mean, I would say this, let me make this concession at least with respect to the male-female. It may be that a woman grabbing a male might not be, we might look at that as a different standard with respect to what's physically menacing or threatening. Particularly if the woman was smaller, one might say that that might not be as physically grabbing a female. What if one is smaller than the other, then? Do we consider that? We're getting into now the size of the participants and the characteristics of the participants to determine whether in fact it is physically threatening. The standard is what a reasonable person would have experienced under those circumstances. I don't think that, I think with respect to two males, it's not I think, I should say, the government's position is with respect to two men, or a male and a female, that it is physically threatening or menacing to have someone grab your crotch or other private area, even if you have agreed to engage in sexual relations when there was no agreement that you would do so then and there and you are in a public space. That's physically threatening and menacing, and the judge in this case at least at a minimum could rationally conclude that a reasonable person would find that physically threatening or menacing. But let's turn to immediate breach of the peace very quickly because Ms. Hester suggests that that has to rise to the level of a fighting words dangerous situation in order to be an immediate breach of the peace. I want to be very clear here that this statute or regulation regulates both speech and conduct, not just speech. And so when the Department of the Interior has in the regulation that it refers to fighting words, there is a speech component for which fighting words, that makes sense. It doesn't make sense, however, that breach of the peace is limited to a fighting words context when there is conduct involved. What would lead to an immediate breach of the peace, certainly if one is walking by and we don't view this just from the standpoint of Ranger Darling, but also from members of the public, would it occasion a breach of the peace for a person walking by to witness this conduct? Judge Howe could reasonably conclude that it would, that it was likely to occasion an immediate breach of the peace. So the Puccia case- The magistrate nor the district court judge got into this whole business on the breach of peace. I don't think the magistrate mentioned it at all and the district court judge dealt with, it seems like to me, the obscenity aspect and the risk aspect. Actually the magistrate judge did mention breach of the peace when he denied the motion to dismiss what he said and it's, I can give you a case citation section on page 40 of the joint appendix. He denies the motion to dismiss before the evidence based on the statement of probable cause and he says at that time that that evidence, that statement of probable cause, it could have violated the statute in all three ways. And he specifically says breach of the peace physically menacing or threatening and obscene. And then the government goes on to prove the case that was in the probable cause finding. And at the conclusion the judge simply says that he finds that beyond a reasonable doubt that the defendant committed the offense. But the magistrate judge was clearly aware because he said he was aware of all three bases of committing this offense and the government argued repeatedly all three bases of this offense. And as you go through the joint appendix and the transcript, the page 112, 113, 119, and 120, the government is arguing on each of those pages that this satisfies all three ways of committing this offense. The government did not put all its eggs in the obscenity basket nor did it put them all in any one of those three baskets, but the government certainly believes that it meets all three. But they argued all three, the judge found at the beginning of the hearing that it could have met all three, and then simply enters a general verdict. I don't think it really matters what the district court in this case in terms of its rationale because this court can affirm on any basis it's apparent in the record and this court is effectively reviewing the magistrate judge's finding. And just one last note, the Puccia case, the Ninth Circuit case that Ms. Hester mentioned with respect to the immediate breach of the peace and the, it is a fighting words case, it's a speech case. And that's not necessarily on point where you have non-expressive conduct as in this case. If there are no further questions, we request that this court affirm the defendant's conviction. Thank you. I'd like to address the Stromberg issue again because the government suggests that there is no presumption that the general verdict rested on unconstitutional ground, but that is not what the Supreme Court states in the Street v. New York case. In context of a bench trial? Yes. Street is a bench trial. And there's no presumption that the judge applied the appropriate standard? No. What Street says is reversal is required unless the record eliminates the possibility that the conviction rested on unconstitutional grounds. And in fact, the court went on in Street to say it would be inappropriate to remand to the district court for an explanation of what it based its verdict on. So really, Street does apply in this circumstance. And in fact, here, the magistrate court may have rested its verdict not just on one, but on two unconstitutionally vague standards. The first being the subjective physically menacing prong. And the second being the obscenity prong. Because if the court applied a standard other than the Miller standard, the standard that the government is urging the court to apply here, then that would be unconstitutionally vague and yet a second basis under Stromberg for sending this case back. With respect to what the court may have relied on in the magistrate court, the government repeatedly argued that it was physically threatening or menacing because Darling was concerned about it. He was not expecting it. That was the gist of the government's argument. And the defense responded by talking about objective factors, even though it didn't articulate objective versus subjective test, the defense did talk about objective factors like the relative size of the two men. Ranger Darling was a very physically fit, younger man. I believe he was like five foot nine and weighed about 200 pounds, something to that extent. So the defense, in effect, was arguing an objective standard and the government was arguing a subjective standard and the district court fully . . . What's the size of the defendant? I'm not sure, but from . . . Yes, you sort of saw that coming once you told me . . . Yes, but the government was arguing it doesn't matter their relative size, which appears to concede that, in fact, that the ranger was bigger than . . . It's a male-female type . . . Right, plus Mr. Lanning was in his 60s. He's an older gentleman. With respect to both the obscenity definition and the definition of an immediate breach of the peace, the government is basing its arguments on what is constitutionally required, but it's ignoring what the regulatory intent was here. The regulatory intent was to aim this regulation at expressive conduct and speech. Just because Mr. Lanning's behavior here was conduct . . . well, it included speech, actually, but the act of grabbing the ranger's crotch, in fact, was conduct, does not mean that the definition under the regulation extends beyond the Chaplinsky case and the Miller definition. In fact, the intent of the regulation was not to extend beyond that. I'd like to address, with respect to the sufficiency of the evidence, that the government emphasizes that Ranger Darling wasn't agreeing to have sex right here and right now, but even if the touching of his crotch was not within the scope of the apparent consent, that doesn't  mean anything. It may have been offensive to Ranger Darling under those circumstances, but that is not the same thing as evidence of physically threatening or menacing. I would point out in response to the questions that Judge Nguyen asked Ms. Ray, there was no evidence that the touching was in any way painful or extended for any length of time. What the ranger testified to . . . What was the evidence on how firm the grab was? He described it as a firm grasp. That is the extent of his description of it. As soon as he felt . . . Did he say that it hurt or that it was painful? No. And it's clear from his testimony, as soon as he felt Lanning touch him there, he reached down and grabbed his hand and said, you're under arrest. And in fact, he said that he didn't even know what was about to happen until that very moment. He didn't know what Lanning was doing backing up to him. So the suggestion that Lanning was beginning a sex act then and there is not supported by the evidence. That's a non-sequitur. The fact that he didn't know what was happening before Lanning grabbed him doesn't indicate that he didn't realize at that point that it appears that he was initiating sexual contact. Well, perhaps that's true, but in any event, it's evidence that it was not physically threatening or menacing Lanning's movements. That he turned around and took a couple of steps, but the officer didn't know what he was talking about until the moment that he was touched. Thank you. Thank you very much.
judges: Allyson K. Duncan, James A. Wynn, Jr., Henry F. Floyd